IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mahmoud Khalil,<br><br>*Petitioner*,<br><br>v.<br><br>William P. JOYCE, in his official capacity as Acting Field Office Director, New York City Field Office, U.S. Immigration & Customs Enforcement, *et al.*,<br><br>*Respondents*. | Civil Action No. 25-cv-1935 |

**DECLARATION OF AMY E. GREER**

I, Amy E. Greer, under penalty of perjury, declare as follows:

1. I am an attorney with Dratel & Lewis, a law firm that specializes in criminal defense in New York. I have been representing Mahmoud Khalil in his disciplinary cases at Columbia University since November 2024.

2. Mahmoud has been experiencing a profound doxing[1] campaign for over two months related to his First Amendment protected activities in support of Palestinian human rights. The harassment was so pervasive that Mahmoud emailed the Columbia University administration repeatedly asking for support.

3. At 6:46 AM on Friday, March 7, 2025, Mahmoud wrote to Interim President Katrina Armstrong at Columbia University describing the vicious and dehumanizing doxing campaign against him – including people falsely labeling him a terrorist threat and calling for his

---

[1] Doxing includes instances of individuals' addresses, pictures, and other personal information being shared online for the purpose of harassment by those who disagree with their opinions.

deportation. He closed the email by saying he was not able to sleep fearing U.S. Immigration and Customs Enforcement ("ICE"), or other dangerous individuals would target him and his family and urging Interim President Armstrong to provide legal support and other protections.

4.     At 8:26 PM on Saturday, March 8, 2025, Mahmoud called me and said he was surrounded by people claiming to be from the U.S. Department of Homeland Security ("DHS") at his Columbia-owned apartment and that they were going to arrest him. An agent told Mahmoud to give him the phone and identified himself to me as special agent Elvin Hernandez. Agent Hernandez told me he was an agent with DHS, but I do not recall whether he specified what branch. I asked why DHS was detaining Mahmoud and whether they had a warrant. Agent Hernandez said they had an administrative warrant. I asked the basis of the warrant, and he said the U.S. Department of State revoked Mahmoud's student visa.

5.     When I told Agent Hernandez that Mahmoud does not have a student visa because he is a green card holder and permanent resident in the U.S., he said DHS revoked the green card, too. I explained to Agent Hernandez that Mahmoud is entitled to due process as a green card holder before his green card can be revoked and he responded that Mahmoud would have the chance to go before an immigration judge. When I began to ask more questions about what grounds they would have to put Mahmoud in immigration proceedings, Agent Hernandez started to grumble at me. I asked him to show me, Mahmoud, or his wife the warrant and he hung up on me.

6.     A couple of minutes passed and around 8:34 PM Mahmoud's wife called using Mahmoud's phone. I was talking to a partner at my firm so we both joined the call. We could hear everything happening. Mahmoud's wife was also narrating everything. DHS agents handcuffed Mahmoud. His wife asked do you have a warrant, but the DHS agents did not respond. Mahmoud's wife asked the agents where they were taking him and again, they did not answer

2

her. She continued to follow them and narrate what was happening and explained to me that there were more agents and cars outside, but nobody would tell her what was happening.

7. DHS agents put Mahmoud in an unmarked vehicle. Finally, one agent told his wife that they were taking him to 26 Federal Plaza. The agent did not take my information as Mahmoud's lawyer or leave any information about who we should contact about his case.

8. I called an immigration attorney to figure out next steps and the partner at my firm helped me draft a letter that I emailed to a generic ICE email stating that Mahmoud is represented by council and invoking his right to remain silent.

9. I worked all night to draft a habeas petition for Mahmoud. The petition was filed at 4:40 AM on March 9, 2025, in the Southern District of New York. At the time of filing the petition, we had every reason to believe that Mahmoud was detained in New York because of what the DHS agent told his wife and the ICE Online Detainee Locator System[2].

10. I originally checked the ICE locator around 10 PM on Saturday, March 8th and Mahmoud was not in the system. I checked again at 1:35 AM on Sunday, March 9th and it said he was in custody in New York and to call the field office. I checked again at 4:29 AM on Sunday, March 9th and it said the same thing. I checked again at 8:30 AM on Sunday, March 9th and Mahmoud was still listed as being detained in New York.

11. Sometime after 9 AM on Sunday, the ICE locator changed to say that Mahmoud was detained in Elizabeth, New Jersey. Around 11:20 AM, Mahmoud's wife notified my colleague that she went to the Elizabeth Detention Center and was told that Mahmoud was not showing up in the system. The person she spoke to at the facility said even if he was brought in, they would not be able to see him in the system for 24 hours.

---

[2] https://locator.ice.gov/odls/#/search.

12. An immigration attorney contacted ICE on Sunday, March 9th after filing the habeas. At 1:47 PM, ICE stated in an email that Mahmoud was en route to being transferred to a different facility. They said he would arrive late Sunday evening and his case will fall under the New Orleans ERO Field Office.

13. Around 3:10 PM the same attorney sent an email to the Assistant United States Attorneys ("AUSA") assigned to Mahmoud's habeas case. An AUSA wrote back quickly saying they would reach out to ICE contacts and asked for a copy of Mahmoud's green card which we sent. Around 4:22 PM we received an email from an AUSA saying ICE knows Mahmoud is a lawful permanent resident and that he was already en route to Louisiana. The same AUSA responded around 5:18 PM saying that based on information and belief Mahmoud is deportable. The AUSA then dropped off the email chain and told us he was conflicted out of the case.

14. I received press outreach around 8 PM on Sunday saying that Mahmoud was in Louisiana. I confirmed this morning around 7:30 AM on the ICE online locator and Mahmoud was listed as being detained at the Central Louisiana ICE Processing Center ("CLIPC") in Jena, Louisiana.

15. Mahmoud's wife called me at 9:36 AM and informed me that he had called her, and they were able to talk for the first time since Mahmoud was taken into custody. Mahmoud then called me at 10:17 AM and confirmed he is in Jena, Louisiana before our call got cut off.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 10th day of March, 2025 in Baltimore, MD.

_____
AMY GREER