

1111 Summer St., Suite 403
Stamford, CT 06905
T: 203-992-4523
F: 212-363-7171
www.zlk.com

Shannon L. Hopkins
shopkins@zlk.com

March 6, 2024

**Via ECF**
Honorable Jennifer L. Rochon
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:     *In re Grab Holdings Limited Securities Litigation, 1:22-cv-02189-JLR*

Dear Judge Rochon,

We respectfully write on behalf of Plaintiffs Si Fran, Amit Batra, and SLG Cloudbank Holdings ("Plaintiffs") in response to the Grab Defendants' March 5, 2024 letter submitting purported supplemental authority (the "Letter"), ECF 101. The Grab Defendants yesterday submitted a decision issued more than six weeks ago, *Mi v. Waterdrop Inc.*, et al., No. 23-301, 2024 WL 159191 (2nd Cir. Jan. 16, 2024) ("*Waterdrop*"), and suggest that Defendants may rely on the opinion during tomorrow's oral argument.[1] *Waterdrop* involved ***the exact opposite*** factual scenario as here, and does not remotely support the arguments in the Grab Defendants' Motion to Dismiss or Reply.

In *Waterdrop*, the plaintiff alleged that Waterdrop Inc. omitted to inform IPO investors of an intra-quarter increase in the key metric, operating costs and expenses. 2024 WL 159191, at \*1. The Second Circuit found that an increase in this metric was consistent with disclosed prior results, particularly since the IPO materials warned that "operating costs and expenses **had increased and were expected to continue** to increase '**in the foreseeable future**.'" *Id*. at \*3.

Here, by contrast, though the Defendants revised Grab's Defective Proxy/Registration Statement three times during the fourth quarter of 2021 ("Q4 2021"), each iteration told investors that the key metric, incentive costs (measured as "incentives as a percentage of GMV") was expected to ***improve***, not worsen over time*. See* ¶¶1.a, 70, 74, 80. The Defective Proxy/Registration Statement emphasized that Grab ***reduced*** incentives in both total amount and as a percentage of GMV during the preceding two years. ¶¶51-53. Narratively, Grab's Defective

---

[1] "Grab Defendants" refers to Defendants Grab Holdings Limited ("Grab" or the "Company"), Anthony Tan, Peter Oey, Tan Hooi Ling, Maa Ming-Hokng, John Rogers, Dara Khosrowshahi, Ng Shin Ein, and Oliver Jay. References to "¶_" are to the Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF 58) (the *"Complaint"*). Capitalized terms used herein have the same meaning as ascribed to them in the Complaint. All emphasis added unless otherwise noted.


Proxy/Registration Statement directed investors to appreciate an improving trend over time with respect to incentives, without informing them that Grab had already ramped up incentive spending. *See* ¶80 ("merchant and consumer incentives … are expected to continue to decline over time as Grab's business matures") and ¶70 ("As Grab has achieved greater scale, it has and may continue to seek to reduce incentives[.]"); ¶65. Unlike in *Waterdrop*, Defendants' IPO materials here did not warn that incentive costs were "expected to continue to increase 'in the foreseeable future,'" and simply hedged that "***[t]o the extent that*** Grab experiences driver-partner supply constraints in a given market, Grab ***may need to increase***, or may not be able to reduce, the driver-partner incentives that Grab offer." *Compare* 2024 WL 159191, at *3 *with* ¶72.

Moreover, the Second Circuit recognized that analysts covering Waterdrop did not change their price targets after the full quarterly financials were released, evidencing that "[a] reasonable investor … would not have been particularly surprised by the rate at which Waterdrop's aggregate expenses increased in Q1:21." *Id*. at *3.

Not so here. Because Defendants were not candid in their IPO documents about the worsening trend in a key performance metric, analysts were fooled. *See* ¶62 (Dec. 9, 2021 UBS analyst report: "the company has managed to keep incentives (for consumers and drivers) in check while sales & marketing costs have declined as % of GMV from 1.9% in 2019 to 1.2% in 2020."). And, when the truth was revealed here, a whopping 90+% increase in incentives year-over-year, analysts were surprised and lowered price targets—the exact opposite circumstances to those noted by the Second Circuit in *Waterdrop*. *See* ¶63*;* ¶104 ("Analysts lowered their price targets for Grab, noting higher than expected incentives to combat a driver shortage."); *Waterdrop*, 2024 WL 159191, at *3.

We thank the Court for considering this submission.

Dated: March 6, 2024

Respectfully,

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins
*Co-Lead Counsel for Plaintiffs and
the Proposed Classes*

cc: All Counsel of Record (via ECF)